IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Case No. 04-cv-02055-MSK-OES

TYRONE W. ALLEN,
JAMES BAILEY, and
ALLEN RUSSELL,

    Plaintiffs,

v.

DISTRICT COURT MAGISTRATE DIANA JOHNSON DUPREE, and
THE STATE OF COLORADO,

    Defendants.

_____

**OPINION AND ORDER GRANTING MOTION TO DISMISS**
_____

**THIS MATTER** comes before the Court pursuant to the Plaintiffs' Motion for Preliminary Injunction **(# 6,** as supplemented **# 18)**, the Defendants' response **(# 14)**, and the Plaintiffs' reply **(# 34)**; the Plaintiffs' Motion for Summary Judgment **(# 20)**, to which no responsive papers have apparently been filed; and the Defendants' Motion to Dismiss for Lack of Subject-Matter Jurisdiction **(# 44)**, the Plaintiffs' response **(# 63, 66)**, and the Defendants' reply **(# 68)**.[1]

---

[1] The Court's records indicate that two other motions also remain pending. With regard to Defendants' Motion for Order Directing [that proposed Intervenors] Compl[y] With Fed. R. Civ. P. 11 **(# 55)**, that motion is **DENIED AS MOOT**, for the reasons given by the Court for denying a similar motion in the Court's Order of February 24, 2005 **(# 57)**. With regard to the Proposed Intervenors' Motion for Order Directing the Clerk of the Court to Commence an Independent Civil Action **(# 61)**, there being no good cause shown– nor indeed an applicable procedural mechanism– for the relief requested, that motion is **DENIED**.

## BACKGROUND

An extended factual recitation is not necessary for purposes of the instant motions. Based on the Complaint, each of the Plaintiffs granted a Deed of Trust to secure a promissory note for the purchase price of a particular parcel of real property. When each defaulted on his obligation, the holder of the respective note (and beneficiary of the Deed of Trust) initiated a foreclosure proceeding under C.R.S. §38-38-101 *et seq*. and C.R.C.P. 120 in the Colorado District Court for the County of Denver. Each case was assigned to Defendant Dupree. Pursuant to C.R.C.P. 120(c), each of the Plaintiffs filed a response to the request for an order authorizing a foreclosure sale. This triggered the hearing provisions of C.R.C.P. 120(d). Although each Plaintiff appeared at the place and time designated for the hearing, he was informed that the court was not prepared to conduct the hearing, and was instructed that a hearing would be rescheduled. Nevertheless, without resetting the hearings or otherwise conducting further in-court proceedings, Defendant Dupree authorized the proposed foreclosure sales, noting "hearing held" on the court's docket.

The Plaintiffs then invoked a number of state procedural mechanisms to obtain relief. For example, Plaintiffs Bailey and Russell filed a "motion for injunction" in the Denver District Court, although they contend that this motion was "ignored" and never ruled upon.[2] They also filed a notice of appeal in Denver District Court, seeking direct review of Defendant Dupree's ruling, although it appears that no action was taken upon this filing either. They also filed a Notice of Appeal in the Colorado Court of Appeals, but that notice was dismissed for lack of jurisdiction, and the Clerk of the Court of Appeals encouraged the Plaintiffs to instead seek a writ of

---

[2] According to the Plaintiffs' brief, "no order relative to that filing appears anywhere in the record."

mandamus from the Colorado Supreme Court pursuant to Colo. App. R. 21. The Plaintiffs apparently followed up on the Clerk's recommendation, but their request for a writ was denied by the Colorado Supreme Court.

The Plaintiffs *pro se* then commenced the instant action, alleging, in their Second Amended Complaint **(# 17)**: (i) a claim under 42 U.S.C. § 1983, insofar as Defendant Dupree violated the Plaintiffs' Due Process rights under the 5th Amendment to the U.S. Constitution; (ii) a claim under § 1983 in that Defendant Dupree violated the Plaintiffs' Equal Protection rights under the 14th Amendment; (iii) a claim under § 1983 insofar as Defendant Dupree violated the Plaintiffs' 13th Amendment rights "giving African American citizens the same rights and protections under the law as white citizens"; (iv) a claim that Defendant Dupree interfered with the Plaintiffs' ability to enforce contracts on the basis of their race, in violation of 42 U.S.C. § 1981; and (v) a claim, presumably against Defendant State of Colorado, seeking an adjudication that C.R.C.P. 120 is a facially unconstitutional denial of Due Process, in that it offers no mechanism for direct appeal.

Although there are other matters pending in this action, the Court first addresses the Defendants Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) **(# 44)**, as that motion addresses potential defects in subject-matter jurisdiction, and thus, requires resolution before the Court can turn to the merits of the case. In this motion, the Defendants contend that this Court lacks subject matter jurisdiction over the Plaintiffs' claims because: (i) the matter is the functional equivalent of an appeal from a state court order, in violation of the *Rooker-Feldman* doctrine; (ii) the case is moot, as all the property in question has been sold; and (iii) that the State of Colorado is entitled to immunity from suit under the Eleventh Amendment, and Defendant

Dupree is entitled to absolute immunity based on her judicial actions. In addition, the Defendants allege that the Plaintiffs fail to state a claim under Rule 12(b)(6).

## JURISDICTION

The Court's subject-matter jurisdiction is invoked under 28 U.S.C. § 1331 and § 1343.

## ANALYSIS

### A. Standard of review

The party asserting the existence of subject matter jurisdiction in this case, the Plaintiff bears the burden of proving such jurisdiction exists. *Montoya v. Chao*, 269 F.3d 952, 955 (10th Cir. 2002).

Rule 12(b)(1) motions generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based. *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002), *citing Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir.1995). Here, the Defendants' motions challenge the accuracy of the Plaintiffs' allegations of continuing violations of the Act. Because the Defendants do not appear to dispute any of the well-pleaded facts in the Plaintiffs' Complaint, their motion is a facial attack on subject-matter jurisdiction, and thus, the Court treats the allegations in the Complaint as true. *Ruiz*, 299 F.3d at 1180.

Given the Plaintiffs' *pro se* status, the Court interprets the Second Amended Complaint liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991).

**B.  Eleventh Amendment immunity**

The Court will first address the State of Colorado's defense of Eleventh Amendment immunity.  The Eleventh Amendment to the U.S. Constitution provides that the federal courts may not hear suits against state entities, absent a waiver of the state's immunity.  *See e.g. Tennessee v. Lane*, 541 U.S. 509, 517 (2004).  However, the Eleventh Amendment does not generally bar suits seeking declaratory or injunctive relief to halt an ongoing violation of federal law.  *See Wilbur v. Locke*, ___ F.3d ___, 2005 WL 2174485 (9th Cir., Sept. 9, 2005), *citing Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1045 (9th Cir.2000); *see also Ruiz*, 299 F.3d at 1180-81 ("a state official like Ms. McDonnell might not be protected by Eleventh Amendment immunity in a case where the plaintiff seeks prospective injunctive relief as a remedy").[3]

Here, the only claim apparently asserted directly against the State of Colorado seeks a declaration that C.R.C.P. 120 violates the U.S. Constitution.  Because this claim seeks only declaratory relief, it is not barred by the Eleventh Amendment.

**C.  Judicial immunity**

Defendant Dupree contends that she is immune from suit by virtue of absolute judicial immunity.  The Supreme Court has long recognized that judges are immune from suits for money damages based upon actions taken in the judge's official capacity.  *Mireles v. Waco*, 502 U.S. 9,

---

[3] The Court is puzzled by the Defendants' citation to *Ruiz* in support of their assertion that "[s]tate and their agencies may not be sued in federal court . . . for injunctive or declaratory relief by virtue of the Eleventh Amendment."  *Docket # 44 at 10.*  Obviously, *Ruiz* stands for precisely the opposite proposition.  The Court will assume this is merely careless reading or drafting on the part of the Defendants' counsel, and not a calculated effort to misstate the law in the Defendants' favor.

10 (1991). Assertions that the judge acted with malice, corruption, negligence, or bad faith are not sufficient to overcome immunity. *Id.* at 11. Rather, judicial immunity may be overcome in only two instances: where the action was not taken in the judge's official capacity, or where the judge acted "in complete absence of all jurisdiction." *Id.* at 11-12. In determining whether an action was outside a judge's official capacity, the focus is not upon the particulars of the act itself, but rather, on the "nature" or "function" of the act. *Id.* at 12-13. The Court's inquiry is whether the act relates to a general function ordinarily performed by a judge. *Id.*

Here, there is no meaningful dispute that Defendant Dupree's actions were undertaken in her official capacity. Although the Plaintiffs allege in the Second Amended Complaint that Defendant Dupree acted "outside of her official jurisdiction as a state district court magistrate, namely the falsification of official records under her control," the Plaintiffs have improperly focused on the particulars of the act, not its fundamental nature. Conducting judicial proceedings and maintaining records reflecting the outcome of such proceedings are matters central to the general functions ordinarily performed by a judge. Thus, Defendant Dupree's actions in conducting (or, more accurately, authorizing the sale without conducting) a hearing and recording that action– however erroneous that entry may have been– in the court's docket are indisputably actions undertaken in her official capacity, for which she is immune from claims for damages. *Mireles*, 502 U.S. at 12-13 ("if judicial immunity means anything, it means that a judge will not be deprived of immunity because the action he took was in error") (internal quotes omitted). Even accepting the Plaintiffs' assertion that Defendant Dupree did not merely err, but rather, acted with malice, bad faith, or gross negligence, such allegations fail to overcome judicial immunity. *Mireles*, 502 U.S. at 11.

Similarly, any assertion by the Plaintiffs that Defendant Dupree acted in complete absence of jurisdiction is without merit. Indeed, by the Plaintiffs' own assertion in the Second Amended Complaint, the C.R.C.P. 120 proceedings were duly assigned to Defendant Dupree for resolution, and the court records she is alleged to "falsif[y]" were records "under her control." Although the Plaintiffs assert that Defendant Dupree's jurisdiction did not authorize her to falsify records, this again reflects an improper focus on the particular conduct, not whether it was done in furtherance of a proper exercise of jurisdiction. So long as Defendant Dupree had authority the make entries on the records she is alleged to have falsified, her actions were taken within her jurisdiction, and are thus immune.

Accordingly, the Court finds that Defendant Dupree is entitled to absolute judicial immunity from the Plaintiffs' claims to the extent they seek money damages. However, judicial immunity does not insulate a judge from suits for requests for injunctive relief. *Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984). Thus, to the extent that the Plaintiffs seek declaratory or injunctive relief against Defendant Dupree, the Court must turn to the other grounds raised in the Defendants' motion.

### D. *Rooker-Feldman*

The *Rooker-Feldman* doctrine provides that lower federal courts are without subject matter jurisdiction to hear claims actually decided by a state court, or claims that are "inextricably intertwined" with a state court judgment; *Guttman v. Khalsa*, 401 F.3d 1170, 1173 (10th Cir. 2005); *Crutchfield v. Countrywide Home Loans*, 389 F.3d 1144, 1145 (10th Cir.2004). At its essence, the doctrine exists to prevent a party losing in state court from seeking what, in substance, would be appellate review of the state judgment in a United States District Court,

based on the losing party's claim that the state judgment itself violates the loser's federal rights. *Id.*  The Defendants do not assert that the state court "actually decided" the Plaintiffs' claims of constitutional deprivations, but *Rooker-Feldman* also applies where the constitutional questions are "inextricably intertwined" with the proceedings actually conducted in state court.  In determining whether such claims are "inextricably intertwined" with the state court proceedings, the Court inquires whether the state court judgment caused, actually and proximately, the injury for which the Plaintiffs seek redress. *Guttman*, 401 F.3d at 1174; *Merrill Lynch Business Financial Services, Inc. v. Nudell*, 363 F.3d 1072, 1076 (10th Cir. 2004).  In other words, the Court examines whether the injury alleged by the Plaintiffs resulted from the state court judgment itself or is distinct from that judgment. *Id.*  In doing so, it is particularly helpful to look to the relief requested. *Id.*

Here, the Second Amended Complaint is not particularly clear as to the nature of the relief the Plaintiffs seek.  It simply requests "declaratory and injunctive relief" and "other appropriate remedies."  However, other filings in this action give some indication as to the relief the Plaintiffs seek.  Shortly after filing this action, the Plaintiffs filed a Motion Under Fed. R. Civ. P. 65 Seeking Declaratory and Injunctive Relief **(# 8)**.  This motion sought "an injunction enjoining the enforcement of [Defendant Dupree's order authorizing sale] or similar orders issued by Magistrate Dupree . . . [a]nd the enforcement of any subsequent documents clouding of giving claim to the related property generated as a result of the issuance of said Orders." *Docket* # 8 at 8.  Clearly, the injury sought to be redressed by the Plaintiffs arises directly from Defendant Dupree's order

authorizing the foreclosure sales of their properties.[4] Thus, the Plaintiffs claims relate to a state court judgment and are barred from consideration in this Court by *Rooker-Feldman*.

The Plaintiffs contend that *Rooker-Feldman* does not apply here because Defendant Dupree's orders authorizing foreclose sales are not final orders subject to appeal. Thus, they argue, it is impossible for them to obtain appellate review of those orders in the United States Supreme Court, as contemplated by *Rooker-Feldman*. *See Guttman*, 401 F.3d at 1173 (*Rooker-Feldman* is the negative inference derived from 28 U.S.C. § 1257(a), vesting review of state court judgments in the U.S. Supreme Court). The Plaintiffs' initial premise is correct: by its terms, "neither the granting nor denial of a motion under [Rule 120] shall constitute an appealable order or judgment."[5] C.R.C.P. 120(d). Rather, parties aggrieved by a Rule 120 determination may seek appropriate injunctive relief in the state courts. *Plymouth Capital Co. v. District Court*, 955 P.2d 1014, 1017 (Colo. 1998); *Bakers Park Min. & Mill. Co. v. District Court*, 662 P.2d 483, 485 (Colo. 1983). Moreover, parties aggrieved by a Rule 120 order have obtained review of that order by commencing a new action in state court seeking to set aside the foreclosure sale. *See*

---

[4]To the extent that the actual proximate cause of the Plaintiffs' injury is not the order approving the foreclosure sale, but rather, the ultimate disposal of the property by sale, the Plaintiffs have not named the proper parties, as neither the State of Colorado nor Defendant Dupree are alleged to have participated in the foreclosure sale itself.

[5]Of course, the interlocutory nature of a Rule 120 order authorizing sale gives rise to the question of whether the Plaintiffs' suit here is premature. As the Plaintiffs point out, Rule 120 also provides that, once the sale has been conducted, court approval is needed before the sale is considered final. C.R.C.P. 120(g). Arguably, issues as to the sufficiency of the Rule 120(d) process may be raised by an aggrieved party at this stage of the proceeding, and it would appear that the order approving the sale is a final one that is subject to appellate review. The Plaintiffs contend that, at least with regard to one of the properties at issue, Rule 120(g) approval has yet to be issued. Thus, it would appear that the foreclosure on this property remains pending, and these Plaintiffs have yet to suffer a cognizable injury.

*Estates in Eagle Ridge, LLP v. Valley Bank & Trust Co.*, ___ P.3d ___, 2005 WL 1773943 (Colo. App. Jul. 28, 2005). However, the absence of a final appealable order is no obstacle to dismissal under *Rooker-Feldman*, as the doctrine is equally applicable to temporary, non-final orders. *Merrill Lynch*, 363 F.3d at 1075, *citing Kenmen Eng. v. City of Union*, 314 F.3d 468, 474-75 (10th Cir. 2002) ("Under *Rooker-Feldman*, lower federal courts possess no power whatever to sit in direct review of state court decisions. This prohibition extends to all state-court decisions--final or otherwise.") (internal quotes and citations omitted).

      The Plaintiffs also cite several cases for the proposition that *Rooker-Feldman* cannot be used against a party who had insufficient opportunity to litigate the claims in state court. *Citing Johnson v. Rodriguez (Orozco)*, 226 F.3d 1103 (10th Cir. 2000). However, *Johnson* is easily distinguishable from this case, as the plaintiff there had not been a party to the state court action. *Id.* at 1109 ("There is the second ground mentioned earlier which bars application of the *Rooker-Feldman* doctrine here--namely the admitted fact that Plaintiff Johnson was not a party to the Utah Adoption proceeding"). The Tenth Circuit's reasoning that a party must have a meaningful opportunity to litigate his federal claims in state court is a recognition of the fact that non-parties categorically have no such opportunity. In any event, the record does not reflect that the Plaintiffs lacked a reasonable opportunity to litigate their claims of constitutional violations in state court. As discussed above, there are at least two avenues by which a party aggrieved by a Rule 120(d) order may obtain review of that decision. Indeed, the Plaintiffs availed themselves of some of these mechanisms, albeit unsuccessfully. Although the Court accepts as true the Plaintiffs assertions that certain filings appeared to have fallen on deaf ears at the Denver District Court, and this Court shares the Plaintiffs' concerns as to the fairness of that situation, the Court cannot

say that the situation amounted to the Plaintiffs having no opportunity to litigate their claims of constitutional deprivations. The Court notes that, by all appearances, the Plaintiffs have proceeded *pro se* throughout the foreclosure proceedings and may have inadvertently made procedural or ministerial missteps that a party represented by counsel may have avoided, and thereby lost or unwittingly waived opportunities for review. At any rate, the Court finds that Colorado law provided the Plaintiffs with multiple means for challenging the deficiencies in the Rule 120(d) proceedings. Any errors committed by the state courts in improperly adjudicating the Plaintiffs' collateral challenges could have been addressed through further state court procedures, and thus, the Court finds that the Plaintiffs had an opportunity to have their claims heard.

Accordingly, the Court finds that, under the *Rooker-Feldman* doctrine, it lacks subject-matter jurisdiction to consider the Plaintiffs' claims for declaratory and injunctive relief against Defendant Dupree.[6] There being no viable claims asserted against Defendant Dupree, she is dismissed from this litigation.

---

[6] The Court notes that although it has not relied upon the unpublished case of *O'Neil v. Board of County Commissioners*, 94 F.3d 656 (10th Cir. 1996) (table) (unpublished), it reaches the same conclusion reached by the Tenth Circuit in that case on similar facts. In *O'Neil*, the plaintiff contended that the state court denied him constitutionally-protected due process by authorizing a foreclosure sale under Rule 120(d) without affording him the statutory period to cure. The Tenth Circuit affirmed dismissal, citing *Rooker-Feldman* principles (although not the doctrine itself). Although the Plaintiffs here contend that *O'Neil* is distinguishable, in that the state court there actually conducted a Rule 120 hearing, the distinction is immaterial. In both cases, the plaintiffs seek relief from a Rule 120(d) order based on claims of statutory non-compliance leading to inadequate process.

### E. Facial challenge to Rule 120(d)

The sole remaining claim is one in which the Plaintiffs seek a declaration as to the facial constitutionality of Rule 120(d), insofar as they allege it violates the Due Process clause of the U.S. Constitution by not providing for direct appeal.

In the abstract, *Rooker-Feldman* does not bar this Court from hearing this claim. An exception to the *Rooker-Feldman* doctrine exists where the Court is asked to adjudicate the facial constitutionality of a state law or rule. However, such review is barred by *Rooker-Feldman* where the effect of the constitutional challenge is to upset a prior state-court judgment against the party. *Kenman*, 314 F.3d at 476. Once again, the Court must look to the relief sought to determine whether the facial challenge is "inextricably intertwined" with the protected state court order. *Id.*

Here, the Court has already concluded that the Plaintiffs seek relief that would require the nullification of Defendant Dupree's Rule 120(d) order. There is no indication that their facial challenge to Rule 120(d) seeks any relief independent from that nullification. Indeed, the Plaintiffs' entire standing to challenge Rule 120(d) on its face arises from the fact that they are aggrieved by Defendant Dupree's order, as they do not purport to have some independent standing for the challenge. Although the Court can conceive of situations in which a party might be able to challenge the facial constitutionality of Rule 120(d) without running afoul of *Rooker-Feldman*, it can find nothing in this case– even interpreting the Plaintiffs' *pro se* pleadings liberally– that would suggest that the Plaintiffs' facial claim can survive a *Rooker-Feldman* challenge. Accordingly, the Court finds that the Plaintiffs' facial challenge is also barred by *Rooker-Feldman*, requiring dismissal of the entire action for lack of subject-matter jurisdiction.

Because the Court lacks subject-matter jurisdiction, it need not consider the Defendants' alternative arguments under Rule 12(b)(6), nor may it consider the remaining pending motions.

## **CONCLUSION**

For the foregoing reasons, the Defendants' Motion to Dismiss for Lack of Subject-Matter Jurisdiction **(# 44)** is **GRANTED**.  The Second Amended Complaint is **DISMISSED** in its entirety pursuant to Fed. R. Civ. P. 12(b)(1).  The remaining motions pending in this case **(# 6, 20, 55, 61)** are **DENIED AS MOOT**.  The Clerk of the Court shall close this case.

Dated this 26th day of September, 2005

**BY THE COURT:**

Marcia S. Krieger
United States District Judge

13